IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DEMETRIUS G. HILL, # B-08854,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 13-cv-202-JPG |
| | ) |
| **DONALD GAETZ, LT. VETH,** | ) |
| **LT. WILLIAMS, C/O CRAWFORD,** | ) |
| **LT. BRADLY, C/O RAMSEY,** | ) |
| **C/O RUTHERFORD,** | ) |
| **MAJOR PICKERYING, C/O SHIRLEY,** | ) |
| **C/O HICKS, C/O KORANDO,** | ) |
| **C/O HORMAN, C/O URBANEK,** | ) |
| **C/O VERCILLINO, and C/O HAGENE,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Pontiac Correctional Center ("Pontiac"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, based on incidents that occurred while he was confined at Pinckneyville Correctional Center ("Pinckneyville"), and during his transfers between prisons. Plaintiff is serving a nine-year sentence for aggravated battery. Plaintiff claims that Defendants, all correctional officers with the exception of Pinckneyville Warden Donald Gaetz, engaged in a common scheme to retaliate against him for having filed a lawsuit against a fellow correctional officer. That earlier case, *Hill v. Best*, Case No. 10-cv-26-JPG-PMF, is still pending in this Court.

More specifically, Plaintiff claims that on January 4, 2012, while Plaintiff was being transferred from Hill Correctional Center to Pinckneyville, Defendants Veth, Korando, Horman, and an unknown Correctional Officer who drove the transfer bus, all made verbal threats to have

other officers physically harm him (Doc. 1, pp. 14-16).  These Defendants recognized Plaintiff from his previous 2009 stay at Menard Correctional Center, which gave rise to Plaintiff's other pending lawsuit referenced above, at a time when Defendant Gaetz was warden of that prison. These Defendants told Plaintiff they would be sure to get a message to Defendant Gaetz that Plaintiff was the inmate suing his former employee James Best; further, they would "teach [Plaintiff] about filing lawsuits against one of our brothers," and he would "be a deadman [sic]" before making it out of Pinckneyville (Doc. 1, p. 15-16).

During Plaintiff's stay at Pinckneyville from January to March 2012, a number of retaliatory actions were taken against him by various officers.  First, an unknown clothing room officer issued Plaintiff clothing that was two sizes too small for him, remarking that he had been told to give Plaintiff "special treatment" (Doc. 1, p. 16).  Defendant Hagene, the property officer, ordered Plaintiff to sign a personal property sheet/receipt despite the fact that some of his items were missing following the transfer, telling him if he did not sign, Plaintiff would not get his legal work to file more lawsuits (Doc. 1, pp. 16-17).  Defendant Urbanek refused to provide Plaintiff with any cleaning supplies for his cell for the entire time Plaintiff spent in receiving segregation (Doc. 1, p. 18).  He was also denied access to any out-of-cell recreation for this period.  Defendant Crawford wrote a false disciplinary report against Plaintiff (Doc. 1, p. 19). Plaintiff wrote to Defendant Gaetz complaining about these retaliatory actions, and Plaintiff's family members contacted prison officials regarding Plaintiff's concerns about his safety (Doc. 1, pp. 18-20).

On January 17, 2012, Defendant Bradly interviewed Plaintiff regarding his complaints of retaliation that had been relayed by Plaintiff's family, but told Plaintiff he would not take seriously any complaints about his officers (Doc. 1, p. 21).  After this, the retaliation escalated,

and Plaintiff claims Defendant Bradly failed to protect him from harm.

On January 23, 2012, Defendant Vercillino told Defendant Ramsey to withhold Plaintiff's lunch tray (Doc. 1, p. 22). When Plaintiff kicked on the cell door to get the attention of Defendant Williams (the supervising Lieutenant), he and several other officers ordered Plaintiff to cuff up. Defendants Williams, Shirley, and Hicks walked Plaintiff to a different cell, and he explained to them that he was not given his lunch in retaliation for a pending lawsuit (Doc. 1, pp. 22-23). Defendant Williams refused Plaintiff's request for food, saying, "We'll teach you." *Id*. Plaintiff next wrote a threatening letter to Defendant Gaetz, hoping to get his attention because Plaintiff's earlier inquiries had not been answered. Defendant Gaetz came to Plaintiff's cell, where Plaintiff explained about the retaliation. Defendant Gaetz responded, "I'll be sure you won't ever eat" (Doc. 1, p. 24). Over the next several days, Defendants Ramsey, Hicks, and Rutherford withheld Plaintiff's meals. Plaintiff's cell had a perforated steel box around the door's food slot, and Defendant Hicks put a lunch tray in the slot but refused to unlock the box to allow Plaintiff to get his food. Defendant Hicks then wrote a false disciplinary report claiming that Plaintiff refused to return his food tray (Doc. 1, p. 25).

When Defendants Williams and Shirley moved Plaintiff back to receiving segregation on January 26, 2012, they threatened to put a bigger prisoner in Plaintiff's cell to hurt him, and tried to provoke Plaintiff into attacking them (Doc. 1, pp. 25-26). On February 29, 2012, the day before Plaintiff was to be transferred out of Pinckneyville to Pontiac Correctional Center, Defendant Shirley, using a racial epithet, told Plaintiff "we're going to have fun with you tomorrow" (Doc. 1, p. 27).

On March 1, 2012, Defendants Shirley, Hicks, and several other officers dressed in extraction tactical gear came to Plaintiff's cell (Doc. 1, p. 27). Contrary to prison policy for the

extraction team, the ensuing events were not videotaped. Plaintiff followed their order to put his hands on his head, and offered no resistance. However, the officers "smashed" him to the floor with a riot shield, where he lay face down. Plaintiff was pressed to the floor by officers who had a knee on Plaintiff's head and on his back, and Defendant Hicks punched Plaintiff repeatedly in the head (Doc. 1, pp. 28-29). Plaintiff heard Defendant Hicks say, "You little black n****r I told you I was going to get you" (Doc. 1, p. 29). Defendant Shirley punched Plaintiff in his ribs and back. Plaintiff was put in extremely tight leg, wrist, and waist restraints that caused his hands and waist to go numb. The Defendants dragged Plaintiff out of the cell, continuing to punch, kick, and knee him in the legs, ribs, and back. Defendants Pickerying[1] and Williams witnessed this beating but did not intervene; instead, they shook the other officers' hands and gave the "thumbs-up" sign (Doc. 1, p. 31). Defendant Shirley strapped Plaintiff into the transport van, pulling the seat belt across Plaintiff's forearms as tightly as possible (Doc. 1, p. 30). After the three-hour ride in this condition, Plaintiff suffered abrasions on his arms that have left scars (Doc. 1, p. 31). Finally, Defendant Hagene purposely broke Plaintiff's television set in an act of retaliation (Doc. 1, pp. 7, 31).

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the complaint. Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated a colorable federal cause of action against all Defendants for retaliation (Count 1), and against Defendants Hicks, Shirley, Williams, and Pickerying for excessive force (Count 2).

**Pending Motions**

Plaintiff has filed a motion (Doc. 2) for leave to proceed in forma pauperis ("IFP"), including an affidavit stating that he has no employment, has received no income other than gifts from family for the last twelve months, and has no assets or cash on hand. However, he has not

---

[1] This Defendant's name is spelled "Pickering" in the body of the complaint.

tendered a certified copy of his inmate trust fund account statement.  The Court has requested a trust fund statement for the six-month period immediately preceding the filing of this case from the Pontiac Correctional Center, but to date has not received information sufficient to determine the amount of Plaintiff's initial partial payment.  Based on Plaintiff's affidavit of indigence, the Court concludes that he is unable to pay in full the $350.00 filing fee in this case at this time, and therefore it is appropriate to permit him to proceed IFP in this case without full prepayment of the fee.  At such time as the Court receives from the institution's Trust Fund Officer the certified copy of Plaintiff's trust fund account statement as requested, the Court will enter an order authorizing the Trust Fund Officer to deduct from Plaintiff's trust fund account the initial partial filing fee, and to forward this payment to the Clerk of Court.  The order shall also direct subsequent payments to be made pursuant to § 1915 until the filing fee is paid in full. To conclude, Plaintiff's motion to proceed IFP in this case (Doc. 2) is **GRANTED**.  The Clerk of Court is directed to send a copy of this Order to Plaintiff and to the Trust Fund Officer at Pontiac.

Plaintiff's motion for appointment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Frazier for further consideration.

**Disposition**

The Clerk of Court shall prepare for Defendants **GAETZ, VETH, WILLIAMS, CRAWFORD, BRADLY, RAMSEY, RUTHERFORD, PICKERYING, SHIRLEY, HICKS, KORANDO, HORMAN, URBANEK, VERCILLINO,** and **HAGENE**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by

Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Philip M. Frazier** for further pre-trial proceedings, which shall include a determination on the pending motion for appointment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties*

*consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  March 25, 2013**

s/J. Phil Gilbert
**United States District Judge**
